JOHN MEALY, SR., ET AL. v. AMELIA LIPP ET AL.

Delivered April 20, 1897.

**1. Community Homestead—Right of Survivor—Will.**

Where the wife, owning a community half interest in the homestead, died in-testate, leaving children, the surviving husband could not by his will empower his executor to sell more than his own half interest in the homestead property.

**2. Minor—Suit by Next Friend Instead of by Guardian.**

When the interest of a guardian is adverse to that of his ward, the latter may sue by next friend.

**3. Outstanding Title—Power of Attorney With Interest.**

Where heirs executed to an attorney a power of attorney, coupled with an un-divided interest, for the recovery of certain real property, such conveyance, the contract being still unexecuted by the attorney, will not, in an action brought by the heirs to recover the property from a third party, constitute outstanding title, so as to avail the defendant; nor, if executed, would it prevent the heirs, as cotenants with such attorney, from recovering the entire property from such third party.

**4. Homestead—Abandonment—Temporary Absence.**

Temporary absence from the homestead for necessary or reasonable purposes will not constitute an abandonment such as to forfeit the exemption right.

APPEAL from Galveston. Tried below before Hon. WILLIAM H. STEWART.

*James B. & Chas. J. Stubbs,* for appellants.—1. The will of Henry Lipp devolved upon his executor the rights that he himself would have had to have sold the lot for the payment of community debts, and the existence of such debts protected the purchaser, not only of Henry Lipp's half interest, but of the entire lot. The heirs of Mrs. Lipp, deceased, were not entitled to her undivided one-half, if it was sold for the payment of community debts, whether such sale was made by Henry Lipp or his executor, but this judgment is essentially erroneous as to the claim of all the plaintiffs except Paul Lipp, because they had conveyed such claim or right absolutely to Buetell before suit was filed; the minor should not have recovered even if the lot had not been lawfully sold, because he was not properly in court, or represented as the law requires.

2. The community owed debts when Mrs. Lipp died, which, with Mr. Lipp's debts subsequently incurred, were all unpaid at his death.

In Shannon v. Gray, 59 Texas, 252, the well settled rule was recognized that the husband can sell the community homestead after the death of the wife for the purpose of paying a community debt, without first qualifying as survivor in community. "It is equally well settled that his administrator, if he had died, would have had the right to control and administer the property for the purpose of paying the community debts."

So here Henry Lipp's independent executor had precisely the same right that he did to sell the property for the payment of community debts. Ashe v. Youngst, 65 Texas, 631, is the leading authority as to the right of the surviving husband to sell the community homestead for

the payment of debts, and that the children have no interest in the homestead as such, unless an order has been made by the probate court authorizing them or their guardian to use and occupy the same. This last was not done in the present case. Watts v. Miller, 76 Texas, 15; Fagan v. McWhirter, 71 Texas, 569.

3. A superior outstanding title in a third person is a good defense, although the defendant may not claim under such title. Styles v. Gray, 10 Texas, 504; Hughes v. Lane, 6 Texas, 289. Plaintiff must recover on the strength of his own title and not the infirmity of his adversary's. Koenigheim v. Miles, 67 Texas, 114; Rice v. Railway, 6 Texas Civ. App., 357; The word "grant" used in the deed to Buetell is an operative word of conveyance. Harlowe v. Hudgins, 84 Texas, 111; Alford v. Alford. 1 Texas Civ. App., 360. The fact that the consideration of the deed to Buetell was partly to be thereafter earned or paid is immaterial.

4. After the death of the parents, if the minor children are to have the use and occupation of the homestead, it must be through the agency of a guardian, under authority and by permission of an order by the probate court having jurisdiction. Osborn v. Osborn, 76 Texas, 496; Gaines v. Gaines, 4 Texas Civ. App., 408; Hudgins v. Sansom, 72 Texas, 231; Adair v. Hare, 73 Texas, 275.

*A. B. Buetell,* for appellees.—1. The heirs could sue, pending administration, the land being adversely possessed by defendants, claiming under deed from the administrator in his representative or in his individual capacity, because the administrator's interest is adverse to the heirs. Rev. Stats., pp. 687, 688; Rogers v. Kennard, 54 Texas, 30; Barwick v. Barclay, 45 Ala., 215; 10 Am. and Eng. Encyc. of Law, 681, and notes.

2. The mere desire of Henry Lipp, deceased, "that all my just and legal debts be paid," conferred no power in his independent executor, Wren, to sell and convey the homestead of the family to pay community or separate debts; especially when no debts have ever been proved against the estate, by the statute provided, and the estate being insolvent and the homestead being no asset in the hands of the administrator. Rev. Stats., art. 1869; Scott v. Cunningham, 60 Texas, 566; Zwerneman v. Rosenberg, 76 Texas, 522; Childers v. Henderson, 76 Texas, 664; Hall v. Fields, 81 Texas, 553; Lacey v. Lockett, 82 Texas, 190; Cameron v. Morris, 83 Texas, 14.

3. The minor Paul being with relatives, and the minor Amelia being compelled to earn her living as a domestic servant, and their father being at times away from the homestead, did not constitute an abandonment of the homestead; and they all were constituents of the family. Green v. Crow, 17 Texas, 180; Hall v. Fields, 81 Texas, 553.

NEILL, ASSOCIATE JUSTICE.—This suit was originally brought in the form of an action of trespass to try title, by William C., Amelia, and Paul Lipp against John Mealy, Sr., John Mandeville, and P. S. Wren,

to recover a parcel of land situated in the city of Galveston, Texas, known and designated on the maps of said city as lot No. 9 in block No. 189. Pending the suit William C. Lipp died, and his wife and children, mentioned in our conclusions of fact, were made parties plaintiff. Amelia married Frank Nass, who joined her in prosecuting the suit. The minors, Paul Lipp and children of William C. Lipp, prosecuted the suit by A. Buetell as their next friend.

The appellants, defendants below, answered (1) by excepting to the suit being prosecuted by Buetell as next friend of Paul Lipp, upon the ground that appellee P. S. Wren was his guardian; (2) by plea of not guilty; and (3) a plea that Mealy purchased the land in good faith for value from P. S. Wren, the independent executor of the will of Henry Lipp, the ancestor of appellees. The exception was overruled, the case tried without a jury, and judgment rendered against appellants for one-half of the land in controversy; and from this judgment they have appealed.

*Conclusions of Fact.*—The property in controversy was the community property of Henry Lipp and his wife Wilhelmina Lipp, and was their homestead and the only property they owned. Wilhelmina died on the homestead on July 13, 1887, leaving her husband and their minor children, Amelia, Paul, and William C., surviving her. These were the only children of Henry and Wilhelmina Lipp, and they resided with their parents on said homestead. There was no administration, nor necessity therefor, on the estate of Wilhelmina, there being no other property than the homestead, and no debts save a small amount for taxes. Henry Lipp continued to reside on the property until within a few weeks of his death, when he became dangerously ill and went to a neighbor's for attention, and died there, his death occurring about three years after the death of his wife. His son William C. was never with the family after his mother's death, having been left in Houston while a boy to learn the carpenter's trade. He married there, and remained until after this suit was brought, when he moved to Galveston, where he died two or three months before this case was tried in the District Court. He left surviving him his widow Georgianna and their children—Ivey, aged 6 years, Allen, aged 4, and Estella, aged 2 years. He was 26 years old when he died. Amelia remained with her father on the homestead for some time after her mother's death, but he became sick with consumption, and then she hired out and earned her own living. She was 14 years old when her mother died, and after this suit was instituted she married Frank Nass. Paul was 12 years old then, and remained with his father some time afterwards, but his father being sick with consumption seven or eight months prior to his death, he was sent to an uncle in Chambers County, with whom he was when his father died. Henry Lipp left a will appointing P. S. Wren his executor without bond, and directing that no action thereon be had in the probate court except the probate thereof and the filing of an inventory. The will directed that

his debts be paid and that his property be equally divided between his two children. Henry Lipp had a life insurance policy in some company, which his executor collected after his death. In the year 1892 Wren, as the executor of Henry Lipp, sold the lot in controversy to appellant John Mealy, Sr., for $1000, which was paid. Henry, at his death, owed some taxes on the property, which, together with the expenses of his last sickness, medical bills, and burial expenses, amounted to about the sum of $610.89. Besides this Wren claims about $300 indebtedness to himself. P. S. Wren was also the guardian of the estate and person of Paul Lipp.

For the purpose of showing an outstanding title to a part of the premises, appellants introduced in evidence the following instrument, which was duly acknowledged and recorded, viz:

"*The State of Texas, County of Galveston.*—This agreement witnesseth: That the undersigned have this day employed A. B. Buetell, of Galveston, Texas, an attorney, to enter and prosecute suit in the District Court of Galveston County, Texas, in order to recover from John Mealy, and all other adverse claimants, the title and possession of that certain lot of land known and designated on the map and plan of the Galveston City Company as lot numbered nine (9), in block numbered one hundred and eighty-nine (189), together with improvements thereon, situated in the city and county of Galveston, State of Texas, and in lieu of fee for his services in this behalf rendered and to be rendered, we do hereby bargain, grant, sell, and convey unto the said A. B. Buetell, his heirs and assigns, an undivided one-third interest in and to said lot of land and its improvements.

"Witness our hand this 15th day of August, 1894.

"WILLIAM C. LIPP,
"AMELIA LIPP."

*Conclusions of Law.*—1. We agree with the trial judge in his conclusions, that "whatever authority the executor Wren may have had under the will of Henry Lipp, deceased, to sell said deceased's one-half of the property in controversy, he had no power to sell the other half of the property which Mrs. Wilhelmina Lipp died seized and possessed of. The will of Henry Lipp, deceased, could only empower his executor to sell deceased's interest in the property; it could not give the executor the right to sell the undivided half of the property owned by the deceased wife of the testator;" and that "the heirs of Mrs. Lipp, deceased, are therefore entitled to her undivided one-half of the property deeded by executor Wren to defendant John Mealy, Sr."

2. That "Wren's interests and claims being antagonistic to his ward Paul Lipp, therefore Buetell had authority to sue as said minor's next friend."

3. We do not think that the instrument copied in our conclusion of fact shows an outstanding title to any of the property in controversy.

It simply showed a contract by which A. B. Buetell would have an interest in the property for his fee as an attorney, upon prosecuting the suit to a successful termination. However, if it should be conceded that the effect of the instrument was to vest title in Buetell, it would constitute him a tenant in common with the plaintiffs, and, upon the principle that one cotenant can recover the interest of his cotenants as well as his own, it could not avail appellants as an outstanding title. Pilcher v. Kirk, 60 Texas, 162.

4. There was no error in the court's holding that the property in controversy was the homestead of Henry Lipp and his children. When a man from sickness leaves his home and goes to the house of a neighbor to be cared for, and dies there, his little daughter, from necessity, leaves the parental roof to earn by her own hands a living, and his little son is sent for shelter to the home of a relative, the homestead is not abandoned, and can not, in Texas, be taken from the children.

There is no error as to appellants in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused by Supreme Court. See Mealy v. Lipp, 91 Texas, 182.