JACKSON et al. v. GRAHAM et al.
(No. 6062.)

(Court of Civil Appeals of Texas. San Antonio. June 19, 1918. Rehearing Denied Oct. 16, 1918.)

1. BOUNDARIES ⬤⟹3(3) — CONTROL OF OBJECTS.

In boundary suit, instruction that, in locating land lines and corners, resort must first be had to natural and artificial objects called for, without variation for course, distance, quantity, or other facts, was proper.

2. BOUNDARIES ⬤⟹41 — INSTRUCTIONS — DISPUTED LANDMARKS.

In boundary suit, where plaintiffs claimed corner at tree marked F, and defendants claimed the corner at a different tree, alleged to be so marked, but on which the letter was indis-

tinct, instruction describing plaintiffs' claimed tree, and requiring verdict for plaintiffs, if such was the corner, held proper.

3. TRIAL ⬤⟹203(3), 350(1) — INSTRUCTIONS — SPECIAL ISSUES—ISSUES OF EACH PARTY.

When a case is submitted on a general charge, issues of each party should be affirmatively submitted, but such is not the case if the submission is on special issues.

4. BOUNDARIES ⬤⟹25—JUNIOR SURVEY—COINCIDENT CORNERS.

Where junior survey located northwest corner at the southwest corner of a senior survey, and called for a marked tree at that point, instruction controlling findings by the call for the tree in the junior survey held proper.

Appeal from District Court, Zavala County; R. H. Burney, Judge.

Action by Mary Louise Graham and others against T. J. Jackson and others. Judgment for plaintiffs, and defendants Jackson appeal. Affirmed.

George C. Herman, of Batesville, G. C. Jackson, of Crystal City, G. B. Fenley, of Uvalde, and George Powell, W. C. Linden, and Joe H. H. Graham, all of San Antonio, for appellants. W. B. Teagarden, of San Antonio, and L. Old, of Uvalde, for appellees.

SWEARINGEN, J. Mary Louise Graham, joined by her husband, J. W. Graham, George A. Norsworthy, and Ross E. Doughty, Jr., a minor, by his guardian, Ross E. Doughty, all appellees, brought this suit in trespass to try title to lands described, and for damages against T. J. Jackson and wife, Emma Jackson, and M. Peebles and wife, Margaret Peebles. T. J. Jackson and wife impleaded M. Peebles and wife upon their alleged covenant of warranty.

Upon the trial the cause developed into a boundary suit. The only two issues were: First, the location of the common boundary between surveys Nos. 51 and 50, which common line was the south boundary of No. 51 and the north boundary of No. 50; second, the issue of the rental value of the land in dispute. Appellants disclaimed as to all land in No. 51 and appellees disclaimed as to all land in No. 50.

The cause was submitted upon special issues to the jury. Judgment was in favor of appellees Mary Louise Graham and husband, J. W. Graham, George W. Norsworthy and Ross E. Doughty, guardian of Ross E. Doughty, Jr., establishing the boundary on the line claimed by appellees, and against T. J. Jackson and Emma Jackson for damages in the sum of $50, with interest at the rate of 6 per cent. per annum from September 23, 1917. M. Peebles and Margaret Peebles were dismissed from the suit at the cost of T. J. and Emma Jackson.

The facts are that J. W. and Mary Louise Graham, George W. Norsworthy, and Ross E. Doughty, Jr., owned the land in survey No. 51, and T. J. and Emma Jackson owned the land in survey No. 50. The south line of No. 51 and the north line of No. 50 were identi-

cal. No. 51 was surveyed and patented prior to survey No. 50. The field notes of No. 50 established the N. W. corner of No. 50 and the S. W. corner of No. 51, and called for a bearing tree described thus: A live oak 20 inches in diameter standing on the brink of the bank (the east bank of the Leona river is previously mentioned) marked $\underline{\underline{P}}$ bears N., 47 W., 9.2 vs.

The only object testified to by any witness to identify the location of this common corner, S. W. of 51 and N. W. of 50, was the above-mentioned witness tree marked when survey No. 50 was surveyed for the patentee, Sanchez, whose title the Jacksons own. There was evidence of two live oak trees marked $\underline{\underline{P}}$, both near the east bank of the Leona river, but some distance apart. Appellants' testimony tended to identify the one up the river as the original marked bearing tree; appellees' testimony tended to identify the one down the river as the original bearing tree. Whichever tree was proven to be the original witness tree controlled the determination of this case. The tree identified by appellees was clearly marked as described in the original field notes, and the mark was on the side of the tree facing the corner claimed by appellees to be the N. W. corner of No. 50. The tree attempted to be identified by appellants had a mark that looked as much like a Catholic cross as the letter P. In fact, several witnesses testified that they had carefully examined this mark and were certain that it was not, and had never been, a letter P. Witnesses for appellants admitted the mark would not be recognized as the letter P without careful examination, and even then it could not be readily or positively distinguished from a Catholic cross. Moreover, the evidence showed that this mark was on the opposite side of the tree from the location of the N. W. corner of No. 50 as claimed by appellant. The tree identified by appellees was recognized and remembered by several witnesses as the original bearing tree; whereas, the tree attempted to be identified by appellants was newly discovered by Surveyor Jowers, by means of a process of checking, reversing, and long-range measurements, more or less scientifically made. No witness seems to have had any prior knowledge of this newly discovered tree, and, even when happened upon by Surveyor Jowers, resort to the aid of careful examination was necessary to create the idea that the mark was the letter P, and this careful study failed to put the mark on the side of the tree towards the corner claimed, though the "cuts" which the field notes described as over and under the letter P were on the side of the tree opposite from the mark.

The rental value of the land was proven.

The first assignment is that the verdict is contrary to the evidence. We have carefully examined the entire statement of facts, and have found an abundance of testimony, as indicated in our finding of facts, to sustain the jury's finding. The first assignment is overruled.

The second assignment contends that the court erred in submitting to the jury the following special issue requested by appellees:

"You are charged, gentlemen, that in locating land lines and corners resort must first be had to the natural and artificial objects called for in the grant, if any of these can be found, and if any of these can be found the lines and corners must be established by them, and course, distance, quantity, or any other facts or circumstances cannot be considered to vary the result of establishing the lines or corners as they would be established by such natural or artificial objects, if found. So in this case, if you find and believe from the facts that the live oak tree and the two stumps referred to by Roy Benson and other witnesses for plaintiffs as being the witness tree for the southwest corner of survey No. 51, are the witness trees called for in the patent to surveys No. 50 or No. 51, or if you find and believe that either the live oak tree or the said stumps so spoken of by said witnesses are, or any one of them is, one of the witness trees called for in either one of said patents, then it is your duty to establish the southwest corner of survey No. 51 at the place claimed by plaintiffs, without considering any other facts or circumstances, if there are any by which this result would be defeated, and in such case, if you so find, you will answer question No. 1 in the affirmative."

The court instructed the jury, without objection, that under the undisputed evidence the southwest corner of survey No. 51 and the northwest corner of survey No. 50 are common corners.

The testimony introduced by appellees located the common corner, being the N. W. corner of 50 and S. W. corner of 51, by proving the identity of two stumps and a tree marked $\underline{\underline{P}}$ as the three original bearing trees called for in the field notes of No. 50. The testimony indicated that the two stumps were the remnants of two of the bearing trees and the marked live oak tree was the identical tree.

Appellants' testimony tended to identify other trees found at another point as the original bearing trees called for in the original field notes of No. 50. As stated, the sole issue sought to be determined by the jury was which bearing trees were the ones in fact selected by the original survey.

The first question by the court was as follows:

"Do you find from a preponderance of the evidence in this case that the common corner on the Leona river of surveys Nos. 50 and 51, as mentioned above, upon the ground as originally established by the surveyor who located survey No. 51, is at a point on the north bank of the Leona river near a large live oak tree marked with the letter P, and two live oak stumps, and at a point as claimed by the plaintiffs and as testified to by Surveyor Benson and other witnesses? Answer 'Yes' or 'No.' "

[1, 2] By this question the jury were required to find the true location of the N. W. corner of survey No. 50. The evidence given the jury consisted of evidence of old fences,

ditches, a bridge, a lane, various trees, a footpath, common reputation, etc. By this specially requested issue, to which objection is made, the jury were instructed as to the relative importance of those natural objects called for in the original survey, and identified as the actual footprints of the original surveyor, and to that end the jury were instructed that, if they found the tree claimed by appellees to be the identical tree marked by the original surveyor, that fact should control all facts in conflict therewith. We believe this is the rule of law, and that the requested issue applied this rule to the facts of this case. Bolton v. Lann, 16 Tex. 96, see page 112; Hubert v. Bartlett's Heirs, 9 Tex. 97, 98; Anderson v. Stamps, 19 Tex. 460; Richardson v. Powell, 83 Tex. 588, 19 S. W. 262; Schunior v. Russell, 83 Tex. 83, 18 S. W. 484; Ayers v. Harris, 77 Tex. 108, 13 S. W. 768; Boydston v. Sumpter, 78 Tex. 402, 14 S. W. 996; Schaeffer v. Berry, 62 Tex. 705; Davis v. Smith, 61 Tex. 18.

Criticism is made by appellants of the terms used by the court to describe the tree. The criticism is that these terms used in the description of the tree gave undue prominence to the evidence of appellees. If the two trees could have been distinguished by designating one as the P tree and the other the T tree, the court no doubt would have done so. But both trees were designated by the evidence as P trees. The most natural designation, therefore, was the appellees' P tree or the appellants' P tree. This was in effect the description used by the court in its explanatory charge given at the request of appellees. We are unable to say that any injury was caused to appellants by reason of the court's descriptive terms. The second assignment is overruled.

The third assignment complains of the trial court's refusal of appellants' requested instruction, which reads as follows:

"That if the jury believe from the testimony that the live oak tree situated on the east bank of the Leona river, about 75 yards below the pumping plant, is marked with a P, and is the bearing tree at the N. W. corner of survey No. 50, the Sanchez, called for in patent to said survey, and referred to as the tree marked P, they will find a verdict for defendants."

[3] This requested instruction is clearly the substance of the first question submitted by the court, except that this instruction is given from appellants' point of view. It is well settled that, when a case is submitted to a jury upon a general charge, the issues of each party should be affirmatively submitted. Ry. v. McGlamory, 89 Tex. 635, 35 S. W. 1058. But where the case is submitted on special issues, this rule does not seem to apply. Fain v. Nelms, 156 S. W. 281, § 4; Ry. v. Dawson, 201 S. W. 247, § 5; G. H. & S. A. v. Hodnett, 182 S. W. 7. The third assignment is overruled.

[4] There is no merit in the fourth assignment. The substance of the complaint therein presented is that the court authorized the jury to control its findings by a natural object called for in the field notes of survey No. 50, which survey was junior to survey No. 51, which natural object was not called for in the senior survey. It is true that the witness tree marked P̲ was not mentioned in the field notes of No. 51, and is called for only in the field notes of the subsequent survey of No. 50. However, this marked bearing tree establishes the N. W. corner of survey No. 50, and the field notes of No. 50 expressly establishes this N. W. corner of No. 50 at the S. W. corner of survey No. 51. Therefore when the N. W. corner of No. 50 is found the S. W. corner of No. 51 is also found. We overrule the fourth assignment, and also the fifth, sixth, and eighth, which present a similar question.

Under the seventh assignment the verdict for $50 damages is assailed as contrary to the evidence. The proposition under this assignment contends that appellants withheld from appellees no lands belonging to them not leased and rightfully possessed by appellants. We find that there is evidence that the land claimed by appellants in this suit was neither owned nor leased by appellants, but used by them without the consent of appellees, and we further find that $50 is a reasonable rental value of the land so used, as found by the jury.

The judgment is affirmed.