### BARNES v. CALLAWAY. (No. 6808.)

(Court of Civil Appeals of Texas. Austin. Nov. 17, 1924.)

**1. Boundaries ⬅=36(5)—Field notes of junior survey not admissible to establish boundary of senior survey, except where plaintiff connects herself with junior survey.**

Field notes of a junior survey are not admissible to establish boundary of senior survey, but such rule does not apply where plaintiff, seeking to establish boundary, connects herself with junior survey.

**2. Boundaries ⬅=36(I)—Deed under which plaintiff claimed, and patent and field notes supporting grantor's title, held admissible, against plaintiff.**

In action involving boundary dispute between grantor and grantee, deed under which plaintiff claimed, and patent and field notes supporting grantor's title, *held* admissible as against plaintiff.

**3. Appeal and error ⬅=1050(I)—Admission of evidence cumulative of properly admitted evidence harmless.**

Admission of evidence cumulative of properly admitted evidence was harmless.

**4. Boundaries ⬅=35(4) — Defendant's testimony as to construction of fence before execution of plaintiff's deed to defendant, in accordance with understanding between parties as to the boundary, held admissible.**

In action involving boundary dispute, defendant's testimony that on conveyance of land from plaintiff to defendant it was understood that the boundary would be straight line projecting from old fence, that he cleared line thus projected and constructed fence thereon before deed was delivered, and that he thought land included within fence was included in description, *held* admissible to show that he was attempting to draw deed so as to fix boundaries in accordance with understanding of parties.

**5. Boundaries ⬅=37(I)—Evidence held to sustain finding as to location of boundary.**

In action involving boundary dispute, evidence *held* to sustain finding as to true location of boundary.

Appeal from District Court, Comanche County; J. R. McClellan, Judge.

Suit by Mrs. M. A. Barnes against Oscar Callaway. Judgment for defendant, and plaintiff appeals. Affirmed.

Smith & Woodruff, of Comanche, for appellant.

Callaway & Callaway, of Comanche, for appellee.

McCLENDON, C. J. Appellant brought this suit against appellee to recover a part of survey No. 27, H. T. & B. Ry. Co., in Brown and Comanche counties, bounded as follows: Beginning at the southeast corner of survey No. 27; thence north with the east line of said survey 1,494 varas to its northeast corner; thence west with the north line of survey No. 27, 215 varas to the fence erected across said survey No. 27 by the defendant in the year 1921; thence south with said fence to the south line of survey No. 27; thence east with the south line of survey No. 27, 240 varas to the place of beginning.

While this suit was in form in trespass to try title, it was admitted by both parties that it was in fact a boundary suit to determine the location of the east line of survey No. 27; the plaintiff owning that survey, and defendant having purchased from plaintiff the land east of that survey. In addition to a general denial and plea of not guilty, the defendant pleaded estoppel on plaintiff's part, alleging facts which in effect amounted to an agreement between the parties during the negotiations leading up to the sale to defendant, by which the east line of survey No. 27 was fixed substantially as contended for by defendant.

The cause was tried to a jury upon special issues, who found that the true east line of section 27 was where defendant had erected his fence. A special issue on the

question of estoppel was not answered by the jury. Upon this verdict, judgment was rendered for defendant for the land in controversy, and from this judgment plaintiff has appealed.

The case is briefed under nine assignments of error, of which five complain of the action of the trial court in admitting in evidence certain field notes, patent, and deeds; two complain of the admission of certain testimony of defendant, and the remaining two question the sufficiency of the evidence to support the jury's finding. The following excerpt from the county map shows generally the relative position of the surrounding surveys to section 27:

It was shown that surveys 18, 19, 20, 23, 24, 25, 27, and 28 were all parts of a block of surveys made at very nearly the same time by R. G. Armstrong, district surveyor. The J. Bollinger survey No. 315 was a much older survey, and its north line and northeast corner were well established on the ground. Section 18 or the north half of that section, according to its original field notes, called for the east line of 315 extending north thereon to the northeast corner of 315; thence west 672 varas to a rock for the southwest corner; thence north 1,494 varas to a stake for corner; thence east 1,900 varas, etc. This survey was made on July 27, 1870. Section 24, which was made on the same day, and which was 1,900 varas square, called for the southeast corner of No. 23 as its northeast corner and the southwest corner of No. 19 as its southeast corner. Survey No. 27 was surveyed on August 25, 1871. Its southeast or beginning corner was 672 varas west

of the northeast corner of the Bollinger; thence west with the Bollinger north line, crossing two spring branches distant respectively from the southeast corner 726 and 1,056 varas, in all 2,418 varas, to the southeast corner of No. 28; thence north with the east line of No. 28 1,494 varas to northeast corner of No. 28; thence east with south line of No. 25, at 518 varas past southeast corner, and southwest corner of No. 24 at 2,418 varas, to southeast corner of No. 24; thence south 1,994 (1,494) varas to the place of beginning.

The M. Stephens survey was made in 1874. It begins at the northeast corner of 315; thence west 672 varas; thence north 1,434 varas; thence east 672 varas; thence south 1,344 varas to the place of beginning. On August 24, 1889, R. G. Armstrong made a resurvey of the north half of section 18, eliminating therefrom the M. Stephens. In this survey he begins at the northeast corner of section 18; thence south 1,451 varas to a stone mound on the north line of 315; thence east 208 varas to the southeast corner of the M. Stephens; thence north 1,344 varas to the northwest corner of the Stephens; thence east, etc.

On April 18, 1916, patent was issued by the state to J. W. Dabney, Jr., for the north half of section 18 under the field notes of this resurvey. On September 18, 1899, the plaintiff acquired survey No. 27, and on October 23, 1899, J. W. Dabney, Jr., conveyed to plaintiff a tract of land described as follows:

Beginning on the north line of the Bollinger 672 varas west of its northeast corner; thence west with said line 200 varas more or less to corner of section 27; thence north with said line 1,494 varas to southeast corner of section 24; thence east with said line 200 varas more or less on the south line of section; thence south 1,494 varas to the place of beginning.

The deed from plaintiff to defendant which bore date December 13, 1921, conveyed a tract of land described as follows:

Beginning at the southeast corner of section 27, H. T. & B. R. R. survey, on the north of the John Bollinger league; thence north with the east line of said section 27 to the northeast corner of said section and the southwest corner of section 18, H. T. & B. R. R. Co. survey; thence north with the west line of said section 19 to the northwest corner of said section; thence east with the north line of said section 19 to the middle of said north line, which is the northwest corner of a tract now owned by Oscar Callaway; thence south with the west line of the said Callaway tract to the southeast corner of the M. Stephens 160-acre survey; thence west with the south line of the Stephens and the north line of the John Bollinger survey to the place of beginning, containing 529 acres of land more or less.

On April 1, 1910, one McDonald and wife executed to defendant a deed conveying the

northwest one-fourth of section 16 and the north half of section 18, the field notes of .which embrace the strip of land in controversy in accordance with the field notes of the resurvey of the north half of section 18. The field notes of the resurvey of section 18, the patent of that survey to Dabney, the deed from Dabney to plaintiff, and the deed from McDonald to defendant were all objected to by plaintiff, on the ground that they were incompetent, irrelevant, and immaterial, being junior surveys to that of section 27.

In addition to the objection to these documents, plaintiff assigned error upon the admission in evidence of testimony of defendant to the effect, first, that in drawing the deed from plaintiff to himself he drew it "so as to include that strip of land in controversy"; and, second, "that he believed said deed included the strip of land involved in this suit." The objection to all evidence complained of was that it was incompetent, irrelevant, and immaterial. Since the questions presented only concern the admissibility of evidence, and the sufficiency of the evidence to support the jury's finding, we deem it necessary only to set forth the substance of that portion of the oral testimony which we believe supports the verdict.

R. E. Armstrong, a surveyor and the son of the district surveyor who originally surveyed section 27 and the lands adjoining it to the north, east, and west, testified that he made a survey which began by locating the northeast corner of section 23 and the northwest corner of section 20; thence he ran south, passing the northeast corner of section 24 and the northwest corner of section 19, continuing south on that line to the southeast corner of section 24 and the southwest corner of section 19; and thence in a straight line to the north line of the Bollinger. He also surveyed from that point west on the north line of the Bollinger and found the two spring branches and the southeast corner of section 28 at the proper distances called for in the original field notes of section 27. The line which he ran from the southeast corner of section 24 projecting the east line of that survey was on the line of the fence erected by defendant. He found the original bearing trees for the northeast and southeast corners of section 23, and the northeast and southeast corners of section 24, and the line from the northeast corner of section 23 to the southeast corner of section 24 was marked with the original marks. He placed the southeast corner of section 27 as fixed by projecting the east line of section 24 at 205 varas west of the southwest corner of the M. Stephens, and 877 varas west of the northeast corner of the Bollinger.

The defendant, in addition to corroborating the testimony of the witness Armstrong, testified in substance that the deed from Mrs. Barnes to himself, while executed on December 13, 1921, was not delivered to and accepted by him until January 3, 1922. That before the delivery of the deed he discussed with plaintiff where the west line of the property should be, and had an understanding that this west line should be straight along the old west line of section 19 and a projection thereof south to the north line of the Bollinger. That he would not consider purchasing the land, unless this line was straight. That she understood the line between 27 and 18 was a projection of the line of 19, and was to be straight, and that when he told her this she told him that it did and delivered to him the patent to the Stephens. He told her he would have it surveyed, and she declined to stand any of the expense. That he then had the line cut out and run his fence along the projection south of the west line of No. 19. That there was an old fence along the west line of 19 and the east line of 24, and their common corner had been recognized for 40 years as far back as he could remember. Plaintiff had previously had a deed drawn by Mr. Bonner, but it was not satisfactory as to field notes and other particulars, and defendant rewrote the deed so as to include the strip in controversy. He also testified that at the time he made the trade with her she gave him the original deed from Dabney to herself, covering the strip of land in question.

W. P. Doby, a surveyor, testified on behalf of plaintiff that he made a survey which began at the northeast corner of the Bollinger; thence west 672 varas; thence north to the north line of section 19. He did not find any corners on this land for sections 19 and 24. All of the witnesses upon the subject testified that the original bearing trees for the southwest corner of section 27 could not be found either at 672 varas west of the Bollinger, or 205 varas further west.

The theory of plaintiff was that the original call for the southeast corner of section 27 at 672 varas west of the northeast corner of the Bollinger absolutely fixed that corner and the east line of section 27, and the evidence of the resurvey and patent thereunder of the north half of section 18 and the deed from Dabney to plaintiff were inadmissible for the purpose of locating the southeast corner of section 27 further west than 672 varas from the northeast corner of the Bollinger, on the ground that the resurvey of the north half of section 18 was made long subsequent to the survey and patent of section 27.

[1] As an abstract proposition of law it is well settled that the field notes of a junior survey are not admissible for the purpose of establishing the boundary of a senior survey. But this rule could certainly have no application where plaintiff connects herself with the junior survey.

[2] The deed from plaintiff to defendant

conveyed to the latter lands adjoining section 27 on the east, and called for the southwest corner, west line, and northwest corner of No. 19. Plaintiff herself claimed under a deed from Dabney which conveyed to her the strip of land in question, the field notes to which called for the southeast corner and east line of section 27 as the southwest corner and west line of the land so conveyed, and for the southeast corner of 24 as its northwest corner. That deed was clearly admissible as an admission or recognition on the part of the plaintiff as to the location of the east boundary line of section 27, and, if in fact that east boundary line was where this deed placed it, this deed was essential to support the title to the lands which she conveyed to defendant. We therefore think there was no error in admitting the deed from Dabney to plaintiff or the patent and field notes of the corrected survey which supported Dabney's title.

[3] While we see no bearing upon the case of the deed from McDonald to Callaway, it was merely cumulative of properly admitted evidence, and its admission, if error, was manifestly harmless.

[4] The testimony of defendant which was objected to was clearly admissible, in our opinion, upon both theories of defendant's case. According to defendant's testimony, plaintiff turned over to defendant at the time he drew the deed to himself the deed from Dabney to plaintiff, and in their negotiations, according to defendant's testimony, it was understood that the west line of the land conveyed to him by plaintiff should be a straight line projecting south from the old fence, which was recognized as the west line of section 19, and he cleared out the line thus projected and constructed a fence thereon before the deed was delivered to him by plaintiff. His testimony that he thought he was including this land in the deed, and that he drew the deed to include it, was admissible under his testimony of what the negotiations of the parties were, as showing that he was attempting to draw the instrument so as to fix the boundaries of the land conveyed where the parties had agreed and understood they in fact were.

We overrule all of the assignments relating to the admission of testimony, both oral and documentary.

[5] That the evidence was sufficient to support the jury's finding that the true east line of section 27 was along the fence constructed by defendant in 1921 is hardly open to serious question. Plaintiff's entire case is predicated upon the original call for the southeast corner of section 27 at 672 varas west of the well-established northeast corner of the Bollinger. It must be borne in mind, however, that there was abundant testimony to the effect that the division line

and common corners of sections 19 and 20 on the east and 23 and 24 on the west were well established on the ground; that there was evidence of an old fence marking the division line between sections 19 and 24; that the distance from the southeast corner of section 27 (as fixed by projection of the east line of 24 south to the west line of the Bollinger) to the southeast corner of section 28 corresponded to the distance called for in the original field notes of section 27, and the spring branches were crossed on that line at the proper distances; that the north line of section 27 beginning at the northwest corner calls for 518 varas to the southwest corner of section 24, and 2,418 varas to the southeast corner of section 24, thus making this call for distance correspond with the field notes of section 24, which was 1,900 varas square, and that the southeast corner of section 24, which was well established on the ground, according to Surveyor Armstrong, was called for in the field notes of section 27 as the northeast corner of that survey.

The general rule in establishing the boundaries of a survey are to follow the footsteps of the surveyor, and, if it be conceded that the district surveyor, Armstrong, who made all of the surveys to the north of the Bollinger, established the southeast corner of section 24 where his son, the witness in the present case now testifies it is well marked on the ground, and then called for that corner as the northeast corner of section 27 in the field notes of that section, we have an impossible survey if the southeast corner of section 27 is to be fixed at 672 varas west of the northeast corner of the Bollinger. One of these calls must therefore yield, and, since the evidence amply supported a finding that the common boundary of sections 19, 24, 20 and 23 were well marked and well established on the ground, the jury were clearly warranted in fixing the northeast corner of section 27 as coincident with this location of the southwest corner of section 24, and in disregarding the call for the southeast corner of section 27 as 672 varas west of the northeast corner of the Bollinger as an error.

The evidence fixing the east line of 27 along the line of defendant's fence is further strengthened by the fact that, shortly after plaintiff acquired section 27, she purchased from Dabney a strip of land which called for the east line of section 27 and the southeast corner of section 24, substantially at the place contended for by defendant.

We overrule the assignments questioning the sufficiency of the evidence to support the verdict. Finding no error in the record, the trial court's judgment is affirmed.

Affirmed.