## PLOWMAN et al. v. MILLER.

### No. 2344.

Court of Civil Appeals of Texas. El Paso.
April 3, 1930.

Rehearing Denied May 1, 1930.

Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for appellants.

Marshall Thomas and Thompson, Knight, Baker & Harris, all of Dallas, for appellee.

HIGGINS, J.

Appellee Miller brought this suit against appellants Marcus M. Plowman and others to recover a tract of land in Oak Cliff in the city of Dallas, a part of the Elizabeth Robertson survey, No. 21, described as follows:

"Beginning at a point in the center of Plowman Avenue, which center line of Plowman Avenue is in the east line of tract of land heretofore owned to Jos. Hyneman in said survey, said beginning point being 507½ varas, south of the north line of said Elizabeth Robertson Survey.; thence south 132 feet to a point in the center of said Plowman Avenue; thence east with an old wire fence 363½ feet, more or less, to the northwest line of Zang's Boulevard; thence in a northeasterly direction with the northwest line of said boulevard 140 feet to a point; thence north 86° west 464.4 feet more or less to the place of beginning; save and except the portion of said property so described embraced within the lines of Plowman Avenue."

The common source of title is John M. Crockett, who in 1861 conveyed to John M. Lambeth a tract of land out of the Robertson survey. The plaintiff claims under Lambeth.

In 1863, Crockett conveyed to Geo. W. Laws a tract out of the Robertson survey. The defendants claim under Laws.

The case is one of boundary, the plaintiff claiming that the disputed line begins "in the center of Plowman Avenue 507½ varas south of the north line of said Elizabeth Robertson Survey; thence south 86° east 464.4 feet, more or less, to the northwest line of Zang's Boulevard."

The defendants claim the line begins "at a point in the center of Plowman Avenue, 181.6 feet south of the South boundary line of Oakenwald Avenue; thence South 86° East 374.6 feet to the Northwest boundary line of Zang's Boulevard in the City of Dallas, as said Oakenwald Avenue and Zang's Boulevard are shown on the maps and plats of the City of Dallas and additions thereto."

The court submitted the issue as to the true location of the line, and the jury found it was located as contended by the plaintiff and not as contended by defendants.

The ten years' statute of limitations was also pleaded by defendants and found against them.

Upon these findings judgment was rendered in plaintiff's favor for the land in controversy.

The description in the deed to Lambeth reads:

"Beginning at a stake in a gravelly point on the W. side of my Spring branch and on the N. side of a ravine; from which a double Spanish oak bears N. 81° E. 27 vrs. a Spanish oak bears S. 61° East 30 vrs., being the Southeast corner of a fifty acre tract I have this day deeded to Joseph Hyneman;

"Thence S. 86 E. 660 vrs. to a stake in partition line of said survey between John R. Leonard and Washington Leonard;

"Thence North with said partition line 322½ vrs. to a stake in the thick brush and ravine;

"Thence N. 86 W. 660 vrs. to a stake in said Hyneman's E. line and in the S. E. side of a gravel mond in prairie, from which a hickory 2 feet in diameter bears South 12½° E. 37½ vrs.

"Thence S. with said Hyneman's said line 322½ vrs. to the beginning."

In the deed from Crockett to Laws the description reads:

"Beginning at a stake in the North line of said Section 21 the old Colony ½ mile stake;

"Thence West with said Section line 660 vrs. Hyneman NE corner;

"Thence with said Hyneman's E. boundary South 507½ vrs. to a stake, from which a hickory 2 feet in diameter bears South 12½ degrees East, 37 vrs;

"Thence with Lambeth's North line South 86 East 660 vrs.;

"Thence North with partition line of said Robertson Section 507½ vrs. to the place of beginning."

The Hyneman tract referred to in the preceding deeds is thus described:

"In the County of Dallas and State of Texas, on the South side of the Trinity River about two miles nearly S. W. from the town of Dallas, and upon section 21 in Township one South of the first base line and in Range

on East of the first or principal meridian as surveyed by Peters Colony patented to the heirs of Elizabeth Robison;

"Beginning at the N. E. corner of Section No. 20, the headright of G. S. C. Lenard patented to me, and the N. W. Corner of said Section 21;

"Thence South with the east boundary of said Lenard's Section 1000 varas to a stake from which a post oak 2 feet in diameter brs. S. 10° W. 17½ varas and two post oaks brs. S. 83° E. 28 varas;

"Thence North 70° E. 320 varas to a stake on a high point from which a double Spanish oak brs. N. 81° E. 27 varas and a Spanish oak brs. S. 61° E. 30 varas;

"Thence North with the East boundary of a one hundred acre tract deeded to me by John R. Lenard 830 varas to the North boundary of said Elizabeth Robison's Section, a stake;

"Thence West with said Elizabeth North boundary 297 varas to the beginning containing 50 acres more or less. * * *"

There is no dispute as to the location of the northwest corner of the Elizabeth Robertson survey, No. 21, which is the northwest and beginning corner of the Hyneman tract. The north line of the Robertson survey is established and recognized. The line dividing the Hyneman tract from the Lambeth and Laws tracts is recognized as being the center line of Plowman avenue. The bearing trees at the southwest corner of the Hyneman, the common southeast corner of the Hyneman and southwest corner of the Lambeth, the common northwest corner of the Lambeth and southwest corner of the Laws, have long since disappeared.

By beginning at the recognized northwest corner of the Hyneman, running thence south 1,000 varas and north 70 east 320 varas for the beginning corner of the Lambeth tract, and running thence course and distance as called for in the Lambeth field notes, would place the N. line of the Lambeth at the point contended for by appellants.

On the other hand, if the northwest corner of the Lambeth was actually established by the surveyor in the east line of the Hyneman at a point 507½ varas south of the north line of the Hyneman tract and Robertson survey, then the north of the Lambeth is at the point contended for by appellee. The northwest corner of the Lambeth and the southwest corner of the Laws is a common corner identified by the same hickory bearing tree. If that corner could be now located by its bearing tree there is no question but that it would control course and distance calls in the Lambeth tract, which, if followed, would place it at a different point.

■ The fact that those bearing trees have disappeared does not alter the controlling effect of the actual location of the northwest corner of the Lambeth, if such location can be shown by competent evidence. Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317; Houston Oil Co. v. Choate (Tex. Civ. App.) 215 S. W. 118, 122; Wm. M. Rice, etc., v. Gieseke (Tex. Civ. App.) 154 S. W. 612; Temple Lbr. Co. v. Felts (Tex. Civ. App.) 260 S. W. 228; Stark v. Stout (Tex. Civ. App.) 174 S. W. 1014.

In Houston Oil Co. v. Choate, supra, it was said:

"Probably the most elemental rule is that first importance is to be given to calls for objects on the ground; and if such objects can be identified, or if they have been destroyed or have disappeared, but their previous location can be shown, then the lines will be run accordingly. The mere fact that the primitive landmarks have disappeared does not authorize the limiting of the lines and confining of the boundaries by calls for distance in the field notes. In this case we have evidence about as certain and satisfactory as could reasonably be expected under the circumstances, establishing the previous location of the old bearing trees at the corners of the survey, and the old marked lines extending around it, and there is no authority for limiting the lines and adjusting the corners by the calls for distance. Bolton v. Lann, 16 Tex. 96, 114; Stafford v. King, 30 Tex. 257, 277, 94 Am. Dec. 304; Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317."

According to the field notes of the Laws tract its southwest corner was 507½ varas south of the north line of the Robertson survey No. 21.

W. N. Coombes, witness for plaintiff, testified to two surveys which he assisted in making of the west ½ of the Laws tract; the first about 1873, the second in 1881, when his father sold the land to Geo. C. Manners. The deed to the father of the witness and the deed to Manners appear in the record with field notes as follows:

"A part of the 64 acres of land conveyed to Hardin Hart by Z. E. Coombes, Administrator of the estate of J. K. P. Record, deceased, and being the same land conveyed to Susan A. Good by Hardin Hart on November 7, 1876;

"Beginning at the Northwest corner of said 64 acres a stake in the North line of the Elizabeth Robertson survey, the Northeast corner of Joseph Hyneman's tract;

"Thence with said Hyneman's boundary line South 507½ vrs. a stake; from which a Hickory 2 feet in diameter bears South 12½ East 37 vrs;

"Thence with Lambeth's North Boundary line South 76 East 330 vrs. to stake for corner;

"Thence North 507½ vrs. to stake in the North boundary line in the Elizabeth Robertson survey;

"Thence West 330 vrs. to beginning, and containing 34 acres, more or less."

It will be noted that according to that deed the southwest corner of the Laws tract is 507½ varas south of the Robertson north line and northeast corner of the Hyneman.

As to the first survey, the witness testified:

"I don't recall what the distance was, but whatever the distance was, I had it at the time and was carrying the chain and dropping my pin as I went along, and keeping tab on them. I carried the front end of the chain. In making survey the corner was located. I had the front pin and was at the front end of the chain and the flag carrier was some distance on. The surveyor had me measure up and set my pin where the distance called for. I got up there and the hickory tree called for was located in accordance with the field notes."

As to the second survey, the witness testified:

"My father sold that tract of land to George C. Manners in 1881. It was surveyed at that time. I carried the front end of the chain, and Mr. Manners' son carried the other end of the chain. The survey was made because he was buying the tract from my father. I found no difference in the Survey than the other—it was the same thing. The hickory was still there at the Southwest corner when this survey was made. The tree is gone now."

■ We regard this testimony as sufficient to show that the southwest corner of the Laws was established and located 507½ varas south of the north line of the Robertson survey. If so, then necessarily the northwest corner of the Lambeth tract was 507½ varas south of the Robertson north line, and the corner as thus established and identified by the surveyor will control course and distance calls which would place it elsewhere. See cases cited above.

■ In this connection it may be said we are not unmindful of the rule that ordinarily the field notes of a junior survey cannot be looked to for the purpose of establishing the boundary of a senior survey. This observation is pertinent to the importance attached to the testimony of the witness Coombes. The boundary line here in dispute is controlled by the location of the northwest corner of the Lambeth tract. That is the same corner as the southwest corner of the Laws. The dispute is between the senior and the junior surveys, and, if the southwest corner of the junior Laws survey is shown by the testimony of Coombes to have been located 507½ varas south of the north line of the Robertson survey, then the N. W. corner of the senior Lambeth survey is found and the

dispute settled. Therefore, the rule referred to has no present application. Barnes v. Callaway (Tex. Civ. App.) 269 S. W. 1085; Jackson v. Graham (Tex. Civ. App.) 205 S. W. 755; McCormack v. Crawford (Tex. Civ. App.) 181 S. W. 485.

Furthermore, if the calls of the Hyneman tract be reversed, its southeast corner would be located 830 varas south of the north line of the Robertson survey. The corner thus located would place the disputed line at the point contended for by appellee.

The Hyneman field notes will not close. It was so testified by the witnesses, and a calculation will so disclose. If the course call from the southwest corner of the Hyneman is correct, then the southeast corner of that tract is about 892 varas south of the north line of the Robertson. On the other hand, if 830 varas is the correct distance, then the course call from the southwest corner of the Hyneman should have been about north 60° 13' east. It thus appears a mistake was made in the course call from the southwest corner of the Hyneman, or in the distance call of its east line. We do not think it would be permissible to reverse the calls of the Hyneman and locate its southeast corner by the distance call of its east line, unless there is evidence to support the view that the course call was erroneous and the distance call the correct one. This is true because distance calls are usually regarded as the least reliable. In the Hyneman field notes the southeast corner of the tract is stated to be "a stake on a high point." In the Lambeth field notes this corner is stated to be "at a stake in the gravelly point on the W. side of my Spring branch and on the N. side of a ravine." We think the testimony of the witnesses Coombes, Bridges, Scudder, and Powell is sufficient to support the view that the "high point" or "gravelly point" referred to above was about 50 varas north of where it would be if the call of north 70 east was correct. This sustains the view that such call was the erroneous call in the Hyneman field notes, and that the distance call of the east line was approximately correct. We, therefore, think it was permissible to reverse the calls in the Hyneman field notes and thus locate its southeast corner 830 varas south of the north line of the Robertson survey.

For the reasons indicated appellant's second proposition is overruled, which asserts a peremptory instruction in their favor should have been given because appellee's evidence did not definitely locate the boundaries of the land claimed by him, and likewise failed to definitely establish any natural or artificial objects called for in the field notes in his chain of title.

Appellee's witness, T. W. Baker, testified: "* * * That he used the inclosure for hog pasture, and that 'it wasn't very long

after I made my inclosure that I had a controversy with Mr. Walter Stemmons. He told me; he said, 'You have got four acres of my land fenced there.' And I said, 'What?' And he said, 'Yes, we have got a little strip of four acres of land in there.' The result of the negotiation with him was that I bought it. It was conveyed to me. I think I gave him a note for it. I did not put the deed of record. When I got through with the other land I just turned that back to Stemmons, to Leslie instead of Walter; Walter wasn't in action then. When I settled up my deal I delivered my deed to Leslie. At the time I got that deed from Stemmons covering the four acres, there were marks on the trees indicating the north line of that property—three hacks on several trees running through the draw; surveyors marks is what it was taken for. After I got this property from Stemmons I fenced all of the upper part, on the upper end, not across the hollow."

Appellants insist this testimony shows an outstanding title in Baker. The record does not clearly disclose what interest, if any, Walter Stemmons had in the four acres referred to. It is perhaps inferable he was a son of John M. Stemmons who acquired four acres out of the Lambeth tract in 1885, by whose will, admitted to probate in 1890, the land passed to his wife for life, with remainder to his children. The record does not disclose the names of the children. In a partition in 1906 between Mrs. Stemmons and the children, the four acres were set aside to Mrs. Stemmons, under whom appellee deraigns title.

■ It would seem at best Walter Stemmons had but an undivided interest in remainder. Therefore, his deed to Baker passed only an undivided interest. Conceding Baker thus acquired an undivided interest in the land, the plaintiff owns the other interest as a tenant in common, and as such had the right to maintain this action against a stranger to the title and recover upon the principle that one cotenant can recover his own and the interest of his cotenant as against strangers to the title. Under such circumstances the defense of an outstanding title has no application. Hill v. Smith, 6 Tex. Civ. App. 312, 25 S. W. 1079; Mealy v. Lipp, 16 Tex. Civ. App. 163, 40 S. W. 824; Pilcher v. Kirk, 60 Tex. 162; Sowers v. Peterson, 59 Tex. 216; Boone v. Knox, 80 Tex. 642, 16 S. W. 448, 26 Am. St. Rep. 767, and other cases cited in 10 Michie's Digest, 1061–2.

Other propositions assert appellants were entitled to a peremptory instruction upon the theory that the evidence shows title in them under the ten years' statute of limitations (R. S. 1925, art. 5510). The evidence upon the issue is voluminous. It has been examined with care, and we are unable to say it warrants the holding that title by limitation was established as a matter of law. Moore v. Wooten (Tex. Com. App.) 280 S. W. 742; Stringer v. Johnson (Tex. Civ. App.) 222 S. W. 267.

■ In connection with the issue of boundary, the court submitted a charge upon the rules governing in boundary disputes. Various objections are urged thereto, none of which are regarded as well taken. In cases submitted upon special issues it is the duty of the court to submit such explanations as shall be necessary to enable the jury to properly pass upon and render a verdict on the issues submitted. Article 2189, R. S. The charge challenged was necessary. It is regarded as properly drawn and a correct statement of the rules applicable in the present case.

Affirmed.