J. M. BURNETT V. JOHN C. BURRISS. No. 1149.
MOLLIE AND EDGAR WHITE V. WM. BROOKMAN.
No. 1600.

1. The location of the lines of a survey is to be determined by the lines as actually run upon the ground, where this can be ascertained ; nor will this rule be varied by the fact that an adherence to it would give to the locator less land than he was entitled to by his certificate.

2. Nor is the rule varied by the fact that a call is made to run to the line of an older survey, if that line was never reached in the survey actually made, but the surveyor stopped at another line which was mistaken for it.

APPEAL from Bell.    Tried below before the Hon. J. P. Osterhout.

*McFarland, Saunders & Harris,* for appellants.

*McGinnis & Lowry,* for appellees.

WALKER, J. — These cases are submitted together. They involve the same subject matter, and their decision rests upon the same principles of law and fact.

We will discuss the questions as they are presented in 1149.

In 1839 one George B. Erath, a surveyor, made several surveys for different individuals, lying laterally with each other, each to contain 320 acres.    These surveys commenced on the east line of the O. T. Tyler league, and called for the west line of the Manchaca three-league grant.

In 1867 J. L. Wallace located a donation certificate of 640 acres on what he supposed to be vacant land, lying between the east line of the surveys made by Erath and the west line of the Manchaca grant.

Wallace and those claiming under him claim that Erath commenced his surveys for E. P. Pulliam, Charles Towash and Henry Kattenhorn, on the east line of the Tyler league, and running east for quantity came upon an old marked line which he mistook for the west line of the Manchaca grant, but which was from 400 to 500 varas west of the west line of the Manchaca grant, and which would leave the lands located by Wallace vacant at the time he located upon them.    It does appear that the evidence establishes the fact that the east line which Erath's survey calls for cannot be the true west line of the Manchaca grant.

In running the east and west lines of the Erath surveys, by the testimony of all the witnesses who are interrogated to the point, the lines must have crossed the Lampasas

river—a stream of very considerable volume at this point—at least three times, to have reached the west boundary of the Manchaca grant.

The appellant in this case derives title through mesne conveyances from Wallace. The appellee brought this suit in the District Court to recover the land, and had judgment in his favor at the March term of the District Court.

It is pretty clear to our minds that the plaintiff below entirely failed to make out his case, and it would be very difficult for us to understand why a jury of twelve honest men should have returned the verdict found in this case. The conclusion of the verdict is utterly at variance with the field notes of the surveys made by Erath, as to distance, course and bearings.

The evidence goes strongly to identify the surveys made on the ground as claimed by the appellant. The evidence of Erath is contradictory, if taken literally; but the witness probably does not mean to state an untruth. He says he made the surveys to connect with the west line of the Manchaca grant, but explains this by saying that he run the exact distance called for by the field notes; and a number of other surveyors, who were examined as witnesses (Harvey, the Binghams, Rucker and Pope), all concur in saying that the distance called for in Erath's field notes will not reach the west line of the Manchaca grant by several hundred varas.

If the east and west lines of the Erath surveys are produced no farther east than the old hacked and blazed line, they will not cross the Lampasas river. It does appear reasonable, if not inevitable, that the Erath surveys would have called for the crossing of a river such as the Lampasas, if the lines had crossed it but once, and if three times, we think it almost impossible to suppose the fact would not have been noted.

Of the surveys made in 1839 by Erath, the Pulliam was the first; the others were made upon it, and called for the same east line.

In order, then, to determine the locality of the latter surveys, it would be necessary to define the former. The Pulliam survey defines its northeast corner by witness trees, and the surveyors all testify to the finding of this corner on the old blazed line, from four to five hundred varas west of the west line of the Manchaca grant.

We have noticed the evidence more particularly than we otherwise might, in order to justify our remark upon the verdict; but this verdict will be explained without prejudice to the jury when we consider the assignments for error.

The refusal of the court to give the charge first asked by defendant is assigned as error. This charge is almost in the language of this court in the case of Booth v. Upshur, 26 Texas, 93, and should have been given. (See 2 Comstock, 115; 26 Texas, 10, 401; 11 Texas, 163; 9 Texas, 97; 16 Texas, 74; 19 Texas, 460; 22 Texas, 294; 28 Texas, 449; 29 Texas, 332.)

The second and third instructions asked by the defendant should also have been given. The charge of the court as given was erroneous, in part, because not warranted by the evidence. The evidence does not prove that the plaintiff's survey as run upon the ground extended from the Tyler league to the Manchaca league, and corresponded with the calls of the patent. If the evidence establishes anything by preponderance, it is the converse of this proposition.

The second branch of the charge is certainly erroneous. The court instructs the jury here virtually to the effect that the plaintiff must have his full quantity of 320 acres, without regard to the evidence as to the lines and corners of the survey; and that though the theory of the case

maintained by defendant be true in every particular, yet it is virtually a *sine qua non*—that the plaintiff must have his full quantity of land. This charge made it virtually impossible for the jury to find for the defendant, as the proof is clear that the plaintiff's land must fall short somewhat, if his line running east for quantity terminates on the old blazed and hacked line; but the conclusion would seem to be equally certain that the plaintiff would have greatly more than 320 acres, if his line were produced far enough in an easterly direction to meet the western line of the Manchaca grant.

The law of this case is this: the parties are bound by the surveys actually made upon the ground; and if the plaintiff's land should fall short under this rule, he must blame himself or his surveyor.

We deem it unnecessary to notice farther the charge of the court or the errors assigned.

The judgment in this case must be reversed and the cause remanded. And for similar reasons and in the absence of any error apparent upon the record, the judgment in No. 1600 is affirmed.

No. 1149 REVERSED AND REMANDED.
No. 1600 AFFIRMED.