TEXAS PACIFIC COAL & OIL CO. et al.
v. CRABB et ux. (No. 412–3773.)*

(Commission of Appeals of Texas, Section A. April 4, 1923.)

1. Evidence ⚖=433(5)—Evidence as to intent of lessors in oil lease held admissible under allegation as to mutual mistake.

In a suit against lessees of oil land to recover possession of a portion thereof under the claim that it was not included within the written lease, defendants claim that the land was in fact included, and, if not, that a mutual mistake existed in the description, evidence by plaintiff as to what was intended to be included in the lease *held* admissible in view of defendant's allegations of mutual mistake.

2. Reformation of instruments ⚖=33—Grantor of lessor in oil lease held not necessary party in suit to reform.

In an action by lessor under an oil lease to recover possession of a portion of the land under the claim that it was not included in the lease where the lease referred to a deed to lessor for the purposes of description, the grantor in such deed was not a necessary party to reform the lease.

3. Pleading ⚖=36(2)—Testimony admitted by complaining party in pleading to be correct cannot be complained of by him on appeal.

In an action to recover possession of a portion of certain oil lands leased by plaintiff to defendant on the theory that such portion was not included within the lease, defendants claiming that if such portion was not included it was due to mutual mistake, plaintiffs could not complain of testimony relative to the intent of the lessors where they had already admitted the correctness of such testimony in their pleading.

4. Reformation of instruments ⚖=13(3)—Lessees under oil lease excluding certain land by mistake held entitled to instructed verdict on plea for reformation.

Where an oil lease by mutual mistake failed to include a certain tract of land intended to be included, lessees when sued for possession of such excluded parcel were entitled to an instructed verdict upon their plea of mutual mistake and for reformation.

5. Evidence ⚖=460(6)—Parol evidence as to calls in field notes admissible when calls incorrect when applied to land.

Field notes in a deed may not be ambiguous upon the face of the instrument; but, when it is attempted to apply them to the land, some one or more of the calls may be found incorrect, and,. in such case, parol evidence which throws light upon which call is true and which call is false is admissible.

6. Boundaries ⚖=3(6)—Identified corner in field notes will prevail over course and distance.

Where a corner of a tract of land called for in the field notes is found and identified on the ground, it will control over course and distance, and the lines and corners will not be limited by the call for distance.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Suit by W. W. Crabb and wife against the Texas Pacific Coal & Oil Company and others. A judgment for defendants on a directed verdict was reversed by the Court of Civil Appeals (238 S. W. 279), and defendants bring error. Judgment of Court of Civil Appeals reversed, and that of the district court affirmed.

Jno. Hancock and W. B. Powell, both of Fort Worth, and Scott, Brelsford, Funderburk & Ferrell, of Eastland, for plaintiffs in error.

Templeton & Milam, of Fort Worth, and D. G. Hunt, of Eastland, for defendants in error.

GERMAN, J. This suit was brought in the district court of Eastland county by W. W. Crabb and wife against the Texas Pacific Coal & Oil Company and the Prairie Oil & Gas Company to recover the possession of 12 acres of land, a part of the Mary Fury survey in Eastland county, and for specified damages. D. G. Hunt, J. A. Templeton, and R. F. Milam joined as plaintiffs, claiming a one-half interest in the oil and mineral rights in the land.

The parties will be designated as in the trial court.

In addition to the formal pleas, plaintiffs alleged that on March 13, 1917, Crabb and wife executed an oil and gas lease to Texas & Pacific Coal Company, now Texas Pacific Coal & Oil Company, on the following described land:

Ninety-three (93) acres out of the Mary Fury survey, abstract No. 127, being the same land purchased from W. T. Barker, as per deed recorded in the deed records of Eastland county, Texas, to which deed and record thereof reference is here made for more and full description, containing 93 acres.

It was claimed that the lease referred to did not include, and was not intended to include, any part of the 12 acres sued for, and that same was not in fact covered by said

---

⚖=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied May 2, 1923.

lease. There were also allegations as to the execution of a supplemental lease of date July 2, 1918, which did include the land sued for, but which they alleged was procured by fraud, and it was sought to cancel this supplemental lease.

Defendants answered by general demurrer, general denial, and special plea that the oil lease of March 13, 1917, which they held, included the 12 acres of land in controversy. They also alleged that by the supplemental lease of July 2, 1918, Crabb and wife ratified and confirmed the original lease. By way of cross-action defendants pleaded that if it should be found the original lease did not include the 12 acres described in plaintiffs' petition, yet it was the understanding and intention of the parties at the time of its execution to include this 12 acres; and if the same had been omitted from the lease, it was by reason of a mutual mistake; and there was a prayer for the reformation of the lease so as to include the 12 acres in controversy.

At the conclusion of the testimony, the trial court instructed a verdict for the defendants, and, upon a general verdict of the jury, rendered judgment that plaintiffs take nothing, and in favor of the defendants, decreeing that the lease of March 13, 1917, included and covered the land sued for, and was a valid and binding agreement.

On appeal to the Court of Civil Appeals for the Second District the judgment of the district court was reversed and the cause remanded. The opinion of that court (238 S. W. 280) contains a plat showing the location of the 12 acres and other tracts bearing an important relation to it.

In its original opinion the Court of Civil Appeals makes the statement that neither fraud, accident, nor mistake was pleaded in the case. However, in a statement overruling motion for rehearing, which it appears, has not been published, this is corrected and the allegations of mutual mistake are given consideration.

Plaintiffs made no effort to prove a title to the land, but sought to recover by showing that defendants were claiming under the lease of March 13, 1917, and that same did not include the tract of land they were seeking to recover. They offered in evidence deed by W. T. Barker and others to W. W. Crabb dated March 31, 1913, containing the following description:

Beginning at the N. W. corner of a survey in the name of Henry Rogers, from which a P. O. brs. S. 75 E. 21 vrs., P. O. brs. S. 73½ E. 27 vrs.

Thence east 638³/₁₀ vrs: to corner this tract.
Thence north 1,136 vrs. to corner this tract, which is also the S. W. of the B. H. Epperson survey.
Thence west 327½ vrs. to corner this tract.
Thence south 636 vrs. to corner this tract.
Thence west 310³/₁₀ vrs. to place of beginning, containing 93½ acres of land more or less.

It appears that this 93½ acres more or less was acquired by Barker as two different tracts, one containing 57.70 acres, and the other supposed to contain 36 acres. Plaintiffs offered in evidence a deed by C. U. Connellee to Barker dated October 8, 1900, conveying the 36-acre tract, and containing the following description:

Beginning at the N. E. corner of the 240 acres deeded by T. C. Harper to Phears, a stone set in the ground from which a P. O. brs. south 18 vrs. for the S. E. corner of this tract.
Thence north 621½ vrs. to stake from which a P. O. brs. south 88 west 7 vrs.
Thence west 327½ vrs. to the S. E. corner of the eastern B. H. Epperson 160-acre survey.
Thence south 621½ vrs.
Thence east 327½ vrs. to place of beginning, containing thirty-six acres of land more or less.

The beginning corner of this tract is the northeast corner of the 57-acre tract.

Plaintiffs also offered in evidence a deed by W. T. Barker and wife to W. W. Crabb dated July 16, 1919, conveying the specific tract here sued for, which evidently was made as a correction deed in aid of the prior deed by Barker to Crabb.

It will be observed that the lease by Crabb and wife refers to the deed by Barker to Crabb for description of the 93 acres covered by the lease. For the purpose, presumably, of showing that the original deed by Barker to Crabb did not describe and convey the land in controversy, and that same was therefore not included in the lease, plaintiffs offered as a witness S. D. Waldrip, a practical surveyor. He testified that at the request of Crabb he went on the ground and surveyed the land claimed by Crabb in the Mary Fury survey, having with him at the time the deed by Barker to Crabb. He began at the northwest corner of the Rogers survey called for in the field notes, then ran east to the southeast corner of the 57 acres, and north to what he supposed to be the northeast corner of the 36-acre tract. He then ran west with the north line of the 36 acres and at the distance of 327½ varas, called for in the field notes for the corner of the 36 acres, he found no evidence whatever of a corner, and no line running south from that point. He continued west along the fence a total distance of 435 varas to a point which he says is accepted as one of the corners of the Fury survey. His testimony with reference to this corner is as follows:

"At this point I found what I considered to be the corner. I had been to that corner before. That is the most western corner and is the northwest corner of the 12 acres as shown in the plat. At that place I found a well-established corner. I had been there before. I knew generally that was in fact a corner. That is also supposed to be one of the cor-

ners of the Epperson survey, I think. That is my understanding as a surveyor. * * * At the northwest corner of the 12 acres there was a post oak with a recent mark on it. I was there in 1919 when there was a post oak standing there that had what appeared to be an ancient X on it. It was standing near the northwest corner of the 12 acres, south 24 west 14 varas, and there was still another post oak standing north 48 east from the corner. This last post oak mentioned is not marked, but it is standing out in the road. The fences have been tied to it, and it is in all probability an original bearing tree, but the marks have disappeared. The other tree was standing there in 1919, but has been grubbed up in improving the road."

This witness further testified that the Crabb land was fenced along all of the lines run by him, and that the fence extended along the north line from the northeast corner to the northwest corner of the 12 acres, and the corner identified by him was at the corner of the Crabb fences. According to his measurement there was 57.71 acres in the large tract and 48¾ acres in the tract known as the 36-acre tract. This witness measured off the 12 acres in controversy from the 36 acres by establishing its northeast corner in the north line at a point 327½ varas west from the northeast corner and its southeast corner 635 varas south of that point. At the places where he established the northeast and southeast corners of the 12 acres, there was no evidence of any corners and there was no line connecting these points. He also stated that the 12 acres was in the same inclosure with the 36 acres; that the Crabb house and a part of the cultivated land was on this 12 acres, and there was no division fence between the 12 acres and the 36 acres.

It will be seen, then, that the controversy here is over the excess of 12 acres found upon survey to be in the tract which up to that time had been supposed to contain only 36 acres. Plaintiffs contend that the land covered by the lease, and described in the deed from Barker to Crabb, when surveyed on the ground, will not include this 12 acres, for the reason that the call for course and distance from the northeast corner must control; and when the north line of the tract is stopped at a point 327½ varas west from the northeast corner, the 12 acres will not be included. Defendants are claiming that the northwest corner of the 93 acres called for is the northwest corner of the 12 acres identified by Waldrip, and therefore the lease included this tract.

While plaintiff, W. W. Crabb, was on the stand in his own behalf, on cross-examination, and over objections by plaintiffs, he testified in effect as follows: That at the time he bought these lands from Barker the 12 acres was pointed out to him by Barker as a part of the land he was buying; that it was included in the Barker farm, and was considered as a part of the 36-acre tract; that the house which had been occupied by Barker and his tenants was on this 12 acres; that it was all under one common fence, and it was understood that the north line extended the full distance from the northeast corner to the corner of the fence at the northwest corner of the 12 acres; that he bought the land for 93 acres more or less, and did not know there was any excess in the acreage until he had it surveyed; that he and Barker intended the deed to include all the land pointed out, and to include the 12 acres; that he understood the deed included and described the 12 acres up to the time of the survey; that there was no division fence between the 12 acres and the 36 acres, and nothing to indicate that the 12 acres was not a part of that tract. He further testified that at the time he executed the lease he thought that 93 acres was all that he owned, and it was intended for the lease to cover all the land he owned, including the 12-acre tract.

The substance of all assignments presented by plaintiffs in the Court of Civil Appeals is that the description contained in the deed by Barker to Crabb (which furnishes the description for the lease) is plain and unambiguous, and parol testimony was inadmissible to show the intention of the grantor and the grantee at the time it was made, and was inadmissible to enlarge the boundaries in the deed, so as to include the land in controversy. In other words, they insist that the language of the deed determines the rights of the parties; that according to its terms the 12 acres was not covered by the lease, and it was error to admit the testimony of Crabb showing the intention of the parties to include the 12 acres in the lease.

Under the view we take of the case these assignments are not well taken. It is our opinion that the evidence conclusively shows that the lease contract included the land in controversy.

[1, 2] Looking, however, to the assignments presented by plaintiffs, we will state that there was no error in admitting the testimony of Crabb, as set out above. The allegations of mutual mistake in defendants' cross-action very properly warranted the admission of this testimony. At the time suit was filed, all the title that Barker ever owned had passed to Crabb, either by the first deed or the supplemental deed, and he was not a necessary party to the action to reform the lease. The rule, in actions to correct a written instrument because of mistake or fraud, was concisely stated in McCrory v. Lutz (Tex. Civ. App.) 62 S. W. 1094, in this language:

"Parol evidence may be introduced to show mistake or fraud whereby a contract fails to express the actual agreement, and to prove the modifications necessary to be made, whether the scope of the instrument is limited so as to exclude land or other subject-matter in-

cluded in it, or to embrace land or other subject-matter omitted from it."

This case was affirmed by the Supreme Court in 64 S. W. 780, and numerous cases since then have followed this principle.

[3] Plaintiffs are not in position to complain of this testimony, because they had already made admission of its correctness in their pleadings. In their first supplemental petition, describing the location of the oil derrick on the ground, they allege: · ·

Defendants placed the same on "the tract of land described in the plaintiffs' amended petition and which is the land involved in this suit and which adjoins the 36 acres on the west, and on which the house of plaintiff is located, and the same is the land and house which was pointed out to plaintiffs by .W. T. Barker as part of the land sold the plaintiffs by said W. T. Barker, but was not described nor included in the deed to the plaintiff from said W. T. Barker at the time the 93½ acres was conveyed."

See Day v. Townsend (Tex. Com. App.) 238 S. W. 216.

[4] It being admitted that the 12 acres in controversy was intended to be included in the lease agreement, under their plea of mutual mistake and for reformation, the defendants had a right to an instructed verdict. Plaintiffs insist, however, that the trial court did not base its judgment upon this plea, but upon a finding that the original lease covered the land sued for, and we will briefly consider that phase of the case.

The purpose of a description in a deed of conveyance is to furnish information by which the land actually conveyed may be located on the ground. It has been aptly said that—

"Established corners and marked lines represent the survey as it was actually made, while courses and distance and field notes are merely descriptions of the acts done by the surveyor."

[5] Field notes in a deed may not be ambiguous upon the face of the instrument, but when it is attempted to apply them to the land, some one or more of the calls may be found incorrect, and in such case "parol evidence which throws light upon which call is true and which call is false is admissible." Wilson v. Giraud (Tex. Sup.) 231 S. W. 1078.

[6] In order to properly dispose of this phase of the case it is only necessary to apply the well-known rule in boundary cases, that where a corner of a tract of land, called for in the field notes, is found and identified upon the ground, the same will control over

course and distance, and the lines and corners will not be limited by the call for distance. Houston Oil Co. v. Choate (Tex. Civ. App.) 215 S. W. 122.

The controlling call in the Crabb field notes is for the north line, beginning at the northeast corner, and is as follows: "Thence west 327½ vrs. to corner this tract." The same call in the deed to Barker is as follows: "Thence west 327½ vrs. to the S. E. corner of the eastern B. H. Epperson 160-acre survey." The call in the Crabb field notes for "corner this tract" refers to the corner theretofore established and recognized as the corner of the tract of land conveyed. It is not described in the deed, but this was no doubt due to the fact that it was so well established by fences and other objects known to the parties there was no necessity for a particular description. It was also further identified as the southeast corner of the Epperson survey. In applying the field notes in the deed to the land, this corner not being found at the distance called for, it was proper to admit parol testimony to show its true location, and, when found, the north line was properly extended to it.

The testimony of the surveyor, Waldrip, was admitted without objection. It shows conclusively that there was no corner at a distance of 327½ varas from the northeast corner of the tract, but the true corner was 104½ varas farther west. Its location is not left in doubt from the description given by this witness, but when we consider further the recognition of the lines and of this corner by Crabb and Barker, in maintaining fences, cultivating the land, etc., and the entire absence of any evidence or recognition of any corner where the call for distance would place same, it becomes conclusive that the corner called for is the northwest corner of the 12 acres, and therefore the land in controversy was included in and covered by the original lease.

It is wholly immaterial, under this view of the case, whether the supplemental lease was fairly obtained or not. The plaintiffs raised no issue with reference to this in the Court of Civil Appeals, and we do not find it necessary to discuss that question.

We recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.