**MILLER et al. v. SOUTHLAND LIFE INS. CO. et al.**

No. 2929.

Court of Civil Appeals of Texas. El Paso.
Jan. 18, 1934.

Rehearing Granted in part Feb. 8, 1934.

Bishop & Holland, of Athens, for appellants.

Seay, Malone & Lipscomb, of Dallas, and Wynne & Wynne, of Athens, for appellees.

HIGGINS, Justice.

The question which first arises in this case is one of boundary. It arises out of the fact that the west line of the land in controversy measured from the southwest corner of lot 4 north to the Texas & New Orleans right of way is 288 feet in length, whereas the distance call of the west line of the tract conveyed by P. E. Miller by deed dated June 13, 1920, is 228 feet.

In this connection appellees invoke the rule often applied that a call for the line of an adjoining survey will prevail over a distance call. They invoke this rule as applicable in view of the call in their field notes for the south boundary line of the right of way of the Texas & New Orleans Railroad Company.

Rules for ascertaining boundaries are for the purpose of carrying out the intention of the parties, which intention is to be ascertained upon the face of the grant, read in the light of the surrounding facts and circumstances. It frequently happens that the description of land contained in a deed is consistent upon its face, but when it is attempted to be applied upon the ground inconsistencies in the calls develop. In such cases controlling effect is always given to the call which will give effect to and carry out the intention of the parties and the call inconsistent with and which will defeat that intention is rejected as false regardless of the comparative dignity of the conflicting calls. The rules of comparative dignity of calls are merely helpful in determining to which of the conflicting calls controlling effect shall be given. 7 Tex. Jur., title Boundaries, §§ 5, 33, 34.

The land in controversy—all of block 4 lying south of the Texas & New Orleans Railroad right of way—was owned by P. E. Miller, plaintiff, prior to July 13, 1920, the date of his said deed to the Athens Pottery Company, unincorporated.

He had owned the land since 1894 and occupied the same as his residence and business homestead. The residence was in the northwest corner of the tract and inclosed by fence. The balance of the land was used as a plant for manufacturing pottery in which business Miller had been engaged since 1900.

Miller testified he had the land surveyed in 1920 for the purpose of determining the amount of property to be conveyed to the Athens Pottery Company. The name of the surveyor he had forgotten. The survey was made by himself, Mr. Hable, and the surveyor. They started at the southwest corner of lot 4 and ran north 288 feet to the Texas & New Orleans right of way south boundary line.

"A. We measured the measurement of the lot from the S. W. corner up to the T. & N. O. Right of way as being 288 feet. We then made our first line to read 228 feet, so as to leave 60 foot front in front of the residence.

"Q. Did you establish any corner or marker at that place? A. Yes, sir, we put down a marker, an old coupling pin, or piece of iron, pounded it into the ground.

"Q. Then which direction did you go, Mr. Miller? A. We then run a line East, parallel with the T. & N. O. R. R. Right of way, 100 feet, and made another corner; then we run North 60 feet, back to the T. & N. O. Right of way, and that left a lot 60 X 100 feet in that corner.

"Q. 60 X 100 feet? A. Yes, Sir."

Hable testified the surveyor was G. W. Allison. He assisted in making the survey. He believed they began at the northwest corner and went south and marked the point they came to by a pipe driven in the ground; they then went east close to number 5 kiln; from there they went north to the edge of a ditch. He did not know the distance of the two lines they ran on the west and south but they followed the iron fence around the residence.

There are some discrepancies in the testimony of Miller and Hable but they both say there was a survey actually made and a stake driven in the west line of lot 4. Miller placed the stake 228 feet north of the southwest corner of lot 4, and Hable places it at the southwest corner of the residence

inclosure. It is plain from this a survey was made to carve the residence inclosure out of the lot.

Miller also testified that it was not the intention to convey the 60 X 100 residence inclosure; that the deed omitted two calls. In explanation of his acceptance of the deed for the parcel 50 X 60 in 1926, he testified:

"Q. Now, then, you tell the Jury now that it was your intention in the execution of this original deed to leave out a block of land 60 X 100 feet, is that true? A. Yes, sir.

"Q. Then from that up to this time have you changed your intentions about it? A. No, sir.

"Q. And you have the same intentions now that you had then? A. Yes, Sir, to keep that home lot.

"Q. Then I will ask you to tell the Jury why, if it was your intentions then, is your intentions now, at the time that you had this deed drawn up that you only made it cover 50 X 60 feet, instead of 60 X 100 feet? A. Yes, Sir, I can.

"Q. I wish you would answer that? A. The residence was pretty well surrounded by a lot of building tile in 1926, and I told the Board of Directors how it was, that two calls had been left out of my Deed, and to correct it, if they would make my lot 50 X 60 feet that would be satisfactory, so far as I was concerned."

■■ It seems that the only lines actually run are those referred to by Miller and Hable. According to Miller's testimony, corroborated by Hable, the stake called for at a distance of 228 feet north of the southwest corner of lot 4 was established as a corner of the land to be conveyed and marked by an iron stake. The distance called for—228 feet—was the correct distance. It was not a mistaken call and to arbitrarily extend the west line to the right of way line by virtue of the second call in the field notes is not permissible. To do so would be to disregard the distance call of a line actually surveyed and a corner established by an artificial monument, the location of which can be definitely determined.

The north corner of the west line as established upon the ground and marked by a stake at a distance of 228 feet north of the southwest corner of lot 4, and 60 feet south of the Texas & New Orleans right of way, controls. 7 Tex. Jur., title Boundaries, § 23; Busk v. Manghum, 14 Tex. Civ. App. 621, 37 S. W. 459; Koenigheim v. Miles, 67 Tex. 113, 2 S. W. 81; Castleman v. Pouton, 51 Tex.

84; Burnett v. Burriss, 39 Tex. 501; Allen v. Koepsel, 77 Tex. 505, 14 S. W. 151; Duff v. Moore, 68 Tex. 270, 4 S. W. 530; Thatcher v. Matthews, 101 Tex. 122, 105 S. W. 317, 318; Lutcher & Moore Lbr. Co. v. Hart (Tex. Civ. App.) 26 S. W. 94; Oliver v. Mahoney, 61 Tex. 611; Koch v. Poerner (Tex. Civ. App.) 55 S. W. 386; Polk v. Renihard (Tex. Civ. App.) 193 S. W. 687; Cox v. Finks (Tex. Civ. App.) 41 S. W. 95.

The fact that the iron stake placed at such corner has disappeared is unimportant for its location can be definitely fixed by the distance calls. Thatcher v. Matthews, supra; Houston Oil Co. v. Choate (Tex. Civ. App.) 215 S. W. 118; Wm. M. Rice, etc., v. Gieseke (Tex. Civ. App.) 154 S. W. 612; Temple Lumber Co. v. Felts (Tex. Civ. App.) 260 S. W. 228; Stark v. Stout (Tex. Civ. App.) 174 S. W. 1014; Plowman v. Miller (Tex. Civ. App.) 27 S.W.(2d) 612.

In this connection we quote from Thatcher v. Matthews, supra, by Chief Justice Gaines:

"Where a stake is once placed, it fixes the corner as conclusively as if marked by natural objects. Owing to the fact that it may be removed or obliterated, its location may be more difficult of proof; but, if proved, it fixes the corner with the same certainty as where it is marked by a permanent object. * * *

"A stake is an artificial object, and its mention cannot be disregarded. If the place where it was originally located can be established, the call for distance should yield to it."

■ The trial court evidently assumed that as a matter of law the call for the Texas & New Orleans right of way controlled the distance call of the west line, but upon the facts shown "the question was not purely one of law, to be decided according to the precedence to be given to the different calls, but was a mixed question of law and fact, in determining which, both the rules of law and the evidence as to the footsteps of the surveyor were to be considered." Castleman v. Pouton, 51 Tex. 84.

Upon no other theory can the peremptory charge in favor of the insurance company be sustained.

The error indicated necessitates reversal. In view of retrial discussion of the evidence upon other questions presented in the briefs will be avoided. We will briefly state our views upon such other questions.

If the boundary and homestead issues be found against the plaintiffs, they are, nevertheless, entitled to recover against M. K. Miller the parcel of land 50 X 60 conveyed to P. E. Miller by the Athens Pottery Company by the unrecorded deed dated September 18, 1925, and acknowledged June 12, 1926, unless M. K. Miller purchased without notice of such deed or has acquired title to such parcel by limitation. The evidence raises an issue as to such notice.

It is not disputed the insurance company acquired its lien without notice of such unrecorded deed and its rights are not affected by such deed.

■ The unrecorded deed of June 12, 1926, from P. E. Miller to the Athens Pottery Company enured to the benefit of both defendants if the property then had lost, or if it afterwards lost, its homestead character by abandonment.

■ Upon the homestead issue the law is well settled that the husband has the right, when acting in good faith, to abandon the homestead right and the wife is bound thereby. Hudgins v. Thompson, 109 Tex. 433, 211 S. W. 586; Wynne v. Hudson, 66 Tex. 1, 9, 17 S. W. 110, 113; Bishop v. Williams (Tex. Civ. App.) 223 S. W. 512; Sanders v. Crump (Tex. Civ. App.) 23 S.W.(2d) 850.

■ It is also well settled that a conveyance by the husband alone of the homestead situate upon community property passes the title upon a subsequent abandonment of the homestead right in such property. Marler v. Handy, 88 Tex. 421, 31 S. W. 636; McDonald v. Simons (Tex. Com. App.) 280 S. W. 571; Bishop v. Williams (Tex. Civ. App.) 223 S. W. 512.

In the present case the evidence is abundantly sufficient to show such an abandonment by P. E. Miller before or after his conveyance to the Athens Pottery Company on July 13, 1920. In fact the evidence may perhaps be regarded as conclusively so showing.

■ Aside from the question of abandonment appellees assert against appellants an estoppel in pais to claim their homestead right. There is no evidence to support such an estoppel against Mrs. Miller. Her homestead right is not prejudiced by any act of her husband which might operate as an estoppel in pais against him. Speer, Marital Rights, §§ 496, 497.

For the reason previously indicated we will not discuss the evidence relied upon as creating an estoppel against P. E. Miller. Another reason for not discussing the same is the evident fact that the homestead question

was not tried upon any theory of estoppel but upon the issue of abandonment.

Reversed and remanded.

### On Rehearing.

Appellees call attention to Garrison v. Crowell, 67 Tex. 626, 4 S. W. 69, In that case Garrison and John H. Stephens were claiming adversely to each other a survey of land. In settlement Garrison conveyed to Stephens a portion of the tract. Garrison claimed "that the agreement was that he should make a deed to the latter to 640 acres only, and that quantity of land was actually measured off and surveyed, and the south boundary thereof distinctly marked upon the ground; but that, supposing that the south-west corner of the land so surveyed was the same as the south-east corner of the G. Hodge survey, and on the north boundary line of the A. C. Davis survey, he in his deed described the boundaries as extending to that corner and that line. Beginning at the north-west corner of the land intended to be conveyed, the deed calls for the west line as running 'south 839 varas, to the south-east corner of said Hodges survey, in the N. B. line of the A. C. Davis survey,' and 'thence east at 450 varas, said Davis N. E. corner at 3,550 varas, the E. B. line of said Frost survey,' etc. The distance called for in the west boundary line does not reach the Davis survey by some 79 varas, but does reach the line actually run at the time the survey was actually made. The strip lying between the latter line and that made by the north boundary of the Davis tract, and its extension, is the matter of contention in this suit.

"Some time after the conveyance Stephens moved his fence upon the more southern line, and took actual possession of the disputed land. Stephens subsequently sold the land to defendant Crowell."

In sustaining a judgment in favor of Crowell, Judge Gaines said:

"If it be determined that Crowell is a bona fide purchaser, without notice, of the land in question, the judgment must be affirmed, without reference to any other question presented by this appeal; and we have no doubt that he must be so held. It does not appear that he knew that the distance of the west line called for in the deed would not reach the Hodges corner and the Davis line. Therefore, there was nothing on the face of the conveyance to put him upon inquiry as to any claim upon part of appellant. He found Stephens in possession of the premises in controversy, holding under a duly recorded deed from appellant himself, which, according to well established rules of construction, embraced the land so possessed. He paid his money upon the faith of a conveyance which imported an absolute title in his vendor at least against appellant in this case, and we fail to see any reason why he should be excepted from the rule which protects the innocent purchaser for value against the claim of his adversary, which was unknown to him at the time of his purchase. * * *

"The court below found against appellant upon the main proposition presented by his pleading—that is, that the Hodges corner and Davis line were called for in the deed by mistake; and we are inclined to think that the finding is correct. But we need not consider that question; appellee Crowell being a bona fide purchaser for value, appellant cannot recover."

In the present case the residence in the northwest corner of the tract burned some time before the insurance company acquired its lien. M. K. Miller, the borrower, was in possession of the entire lot from the railway south to the south boundary line. Miller had constructed buildings along the whole of the west line of the property. Appellants' representative inspected the property and there was nothing in its physical aspect or in its occupancy which could have put the insurance company upon notice of any claim adverse to M. K. Miller. Under these circumstances and the authority of the case cited, we hold the insurance company, as a bona fide lienholder without notice, is protected against the adverse claim of title of appellants arising out of the boundary dispute; and, since the jury found the property had been abandoned as a homestead at the time it was conveyed to M. K. Miller, the judgment in favor of the insurance company should be affirmed.

We overrule all of appellants' assignments which question the correctness of the judgment rendered in favor of such company.

The evidence raises an issue against M. K. Miller as to notice of the adverse claim of appellants and as to him our former ruling is not changed.

The motion for rehearing is granted in part and it is now ordered that the judgment in favor of the Southland Life Insurance Company be affirmed and the judgment in favor of M. K. Miller reversed and the cause remanded.