**LIVINGSTON OIL & GAS CO. et al. v. SHASTA OIL CO. et al.**

No. 3622.

Court of Civil Appeals of Texas. El Paso.

Jan. 20, 1938.

Rehearing Denied Feb. 24, 1938.

Harrington & Harrington, of Longview (H. M. Harrington, Jr., of Longview, of counsel), for appellants.

W. H. Sanford and Conan Cantwell, both of Dallas, Bramlette & Levy and Clyde F. Winn, all of Longview, and Phillips, Trammell, Estes, Edwards & Orn, of Fort Worth, for appellees.

NEALON, Chief Justice.

This suit was brought by appellants, as plaintiffs, against Shasta Oil Company and others. It involves a triangular tract of approximately an acre. The lawsuit grows out of the following facts:

In 1901 R. M. Gee and others conveyed by warranty deed to Wm. Cobb a certain 53⅓-acre tract of land situated in the south half of the Carl Rhodes survey in Gregg county, Tex. The land location and lines of the block are shown by the following plat:

Locating the tract thus conveyed, the only surveyor testifying in the case placed the land to run from point B to point C, to point S, to point U and back to point B. Thereafter in 1912 William Cobb and wife gave a deed to B. F. Phillips covering 23½ acres of land out of the above-mentioned 53⅓-acre tract. The description reads as follows:

"All that certain tract or parcel of land lying and being situated in the County of Gregg and State of Texas and more fully described as follows, to-wit:

"Beginning at a stake in road, the SW corner of a 53⅓ acre tract belonging to George Bridgers;

"Thence west 284 vrs. an iron stake;

"Thence north 540 vrs. to right of way T. & P. Railroad;

"Thence east with said T. & P. railroad right of way in an eastward direction 284 vrs.;

"Thence south 400 vrs. to place of beginning, containing 23½ acres more or less."

Appellants contend that the entire lawsuit turns on the construction to be placed upon this last-mentioned Cobb-Phillips deed. There is no dispute between the parties as to the beginning corner being located at point U on the plat. From that point plaintiffs contend the calls run first "west 284 varas" to point T; thence north 540 varas to the right of way of the T. & P. Railroad to point J; thence "east with said T. & P. Railroad right of way in an eastward direction 284 varas" to point K; and thence "south 400 varas to place of beginning," point U, thus omitting from the deed the triangular tract in issue which extends from point U to point L, to point K and thence back to point U. The plaintiff, Livingston Oil & Gas Company, claims title to the oil and gas leasehold estate covering said triangular tract ULK by oil and gas leases from the plaintiffs, other than H. R. Smith, who are the heirs of Wm. Cobb. H. R. Smith claims title to one-half interest in the mineral and royalty rights under said tract ULK by mineral deed from said other plaintiffs. The remaining plaintiffs are the owners of the fee and other one-half of the minerals and royalty rights under said tract ULK. The defendants Shasta Oil Company et al. claim title to the oil and gas leasehold, mineral and royalty rights by mesne conveyances from B. F. Phillips covering the 23½-acre tract mentioned above. All conveyances into these defendants use the identical field notes used in the Cobb-Phillips deed herein referred to. The defendants E. A. Lamb et al. join with the plaintiffs in their contention that the field notes in the Cobb-Phillips deed do not include the triangular tract ULK. Said defendants E. A. Lamb et al. then seek to show a superior title to the plaintiffs by a plea of ten years' limitation use and enjoyment of the triangular tract ULK by G. W. Richey, and subsequent conveyances from G. W. Richey to themselves. They did not give notice of appeal.

The case was heard before the court without a jury, and the court found that the deed from Will Cobb and wife, Seland Cobb, to B. F. Phillips dated November 7, 1912, recorded in Volume Z, page 145, of the Deed Records of Gregg County, Tex., covered and included the tract of land in controversy and gave judgment that plaintiffs take nothing as to both groups of defendants, save as to G. W. Richey, against whom a default judgment was rendered.

Plaintiffs perfected their appeal from this judgment.

### Opinion.

This case was tried to the court. Findings of fact and conclusions of law were not filed, further than that the court in its judgment recited that "the court finds that deed from Will Cobb and wife, Seland Cobb, to B. F. Phillips dated November 7, 1912 and recorded in Volume Z, page 145, of the Deed Records of Gregg County, Texas, covers and includes" the strip of land in controversy. Further findings and conclusions were not requested.

We are, therefore, called upon first to determine whether the facts in evidence warranted this finding and the judgment based upon it. The controversy hinges upon the interpretation of the third and fourth calls contained in the deed from Cobb to Phillips. There is no dispute as to the correct locations of corners U, T, and J shown on the foregoing plat, nor as to the length and course of the western boundary of the George Bridgers' tract, which was the east line of the tract partitioned to Wm. Cobb. The third call is from a corner of the right of way of the T. & P. Railroad "thence east with said T. & P. railroad right of way in an eastward" direction 284 varas; and the fourth call immediately following reads: "Thence south 400 varas to the place of beginning, containing 23-1/2 acres more or less." When the description is applied to the ground, an ambiguity appears. The T. & P. Railroad right of way does not run due east from the west line of said tract. It runs southeasterly, its course more accurately stated being south 65 degrees east. Nor does the fourth call run due south to the beginning point of the tract if it is considered as starting at a point on the right of way 284 varas distant from the northwest corner of the tract. If so placed, its course also will be southeasterly. Therefore, the trial court was justified in looking to the circumstances surrounding the execution of the deed and hearing evidence as to its practical construction by the parties thereto to determine the intention of said parties. Texas Pacific Coal & Oil Co. v. Crabb, Tex.Com.App., 249 S.W. 835, citing Wilson v. Giraud, 111 Tex. 253, 231 S. W. 1074; Sun Oil Co. v. Bennett, 125 Tex.

540, 84 S.W.2d 447. What interpretation is to be placed upon the words "east" and "eastward" in the third call, and what interpretation must they bear to effectuate the intention of grantors in delivering and of grantee in accepting the deed? "Rules for ascertaining boundaries are for the purpose of carrying out the intention of the parties, which intention is to be ascertained upon the face of the grant, read in the light of the surrounding facts and circumstances." When the description is applied upon the ground and inconsistencies are developed, the call "which will defeat that intention is rejected as false regardless of the comparative dignity of the conflicting calls." Miller v. Southland Life Ins. Co., Tex.Civ.App., 68 S.W.2d 558, 560; Tex. Pac. Coal & Oil Co. v. Crabb, Com.App., 249 S.W. 835. When either of the words "east," "west," "north," or "south" is used without qualification or variation in describing the boundaries of land, the meaning is "due east," "due west," "due north," or "due south," as the case may be. Currier v. Nelson, 96 Cal. 505, 31 P. 531, 746, 31 Am.St.Rep. 239; Craig v. Hawkins' Heirs, 4 Ky. 53, 1 Bibb 53; McCalla Co. v. Sleeper, 105 Cal.App. 562, 288 P. 146; City of Roanoke v. Blair, 107 Va. 639, 60 S.E. 75, citing Devlin on Deeds, § 1035. While "northwardly" has been held to mean approaching towards the north rather than towards any other cardinal points, Craig v. Hawkins' Heirs, supra, and "eastwardly" has been held to mean "due east" unless there be some object which can be found to control the course (in the instant case the railroad right of way), in which case the course will run east, varying from that point to include the object. Simms' Lessee v. Dickson, 3 Tenn. 137, Cooke 137, 140, 22 Fed.Cas. p. 158, No. 12,869. Fratt v. Woodward, 32 Cal. 219, 91 Am.Dec. 573 is to the same effect practically. If the language be construed to give effect to the call for "east" and for distance to mean that the terminus of the line shall be a point on the right of way 284 varas farther east than its beginning point, rather than that it shall apply to the distance as measured along the railroad right of way, we reach a point due north of the beginning point and can give literal effect to the course of the fourth call, "south 400 varas to the place of beginning"; and we will more nearly give effect to the fourth distance call than if we follow the line insisted upon by appellants. The north and south lines of the survey will then be of equal length and the full quantity of 23½ acres will pass. The trial judge may well have thought that there was more than mere coincidence in the fact that both the first and third calls were for 284 varas and the fourth course was "south," which ordinarily means "due south"; and while quantity will not control as against calls for course and distance, it is to be noted that the deed does not call for 23½ acres out of a larger tract. The recital of acreage seems intended to be descriptive of the tract.

"Generally, it will not be presumed that a party granting land intends to retain a long narrow strip next to one of his lines; but if the courses and distances approximate closely to a line or corner of the tract owned by the grantor—especially if the description in the deed corresponds, exactly or substantially, with the description in the title papers under which the land is held—it will be presumed that the lines mentioned are intended to reach the corners and run with the lines of the tract, though the trees marked and described have disappeared before the making of the deed. Western Min. & Mfg. Co. v. Peytona Cannel Coal Co., 8 W.Va. 406," cited with apparent approval in Shell Petroleum Corporation v. Landers, Tex.Civ.App., 107 S.W. 2d 509, at page 512.

Exactly three months after the tract was conveyed to Phillips, he conveyed to G. W. Richey, who, according to his testimony, took possession of the entire tract between its acknowledged west line and the Bridgers land. When Richey took possession, Will Cobb lived upon the tract north of the railroad. G. W. Richey further testified that there was timber on the upper end of the strip in dispute and that he cut the timber off and cleared this land through 1914 and 1915, and after that he cultivated it, and that he had moved on the tract of land and taken possession of it a good while before Will Cobb died; that he took possession of the land immediately after he bought it from B. F. Phillips and stayed in possession of it two years; that after that he had the land worked by tenants every year, and pastured it every winter; that the Cobbs made no claim to it after he got his deed from B. F. Phillips; that the Cobbs lived on the other side of the railroad; that the Cobb boys at times worked for him as farm hands and tenants; that at the time he purchased from B. F. Phillips the tract of land was fenced, and the

fence was on the east side of the strip of land here involved; that he and Will Cobb were on good terms; that he raised a lot of sugar cane; that Will Cobb helped him gather it; that he never heard of any strip being in there until after the oil boom.

Eugene Cobb, son of Will Cobb, deceased, and the only one of plaintiffs to testify, said that his mother and some of the children cultivated land north of the track "up to the time of the oil field"; that south of the railroad they did not cultivate after the sale to Phillips; that after Phillips sold to Richey some of the family worked for Mr. Richey.

After taking into account all of the circumstances in evidence, we conclude that the trial judge did not err in his interpretation of the deed from Cobb to Phillips.

All assignments of error are overruled.

Judgment is affirmed.